**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| KENNETH W. COATS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:08-cv-0819-SEB-DML |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Kenneth W. Coats ("Coats") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I. Background**

Coats filed applications for SSI and DIB on October 19, 2004, and January 14, 2005, respectively, alleging an onset date of disability of March 1, 2002. His applications were denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on September 26, 2007. Coats appeared, accompanied by his attorney. Medical and other records were introduced into evidence. Coats and a vocational expert testified at the hearing. The ALJ issued a decision on February 29, 2008, denying benefits. On April 17, 2008, the Appeals Council denied Coats' request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Coats met the insured status requirements of the Act only through September 30, 2005; (2) Coats had not engaged in substantial gainful activity since March 1, 2002, the alleged onset date; (3) Coats had severe impairments consisting of a seizure disorder, optic neuritis, headaches and a substance abuse disorder; (4) Coats did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Coats had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: he was limited to simple and repetitive tasks, he should avoid work around unprotected heights and dangerous moving machinery, and he should not operate a motor vehicle or perform jobs requiring wide visual fields or color perception; (6) Coats was unable to perform any past relevant work; (7) Coats was born on November 27, 1971 and was thirty years old, which is defined as a younger individual age 18-49, on the alleged disability onset date; (8) Coats had a limited education, was able to communicate in English, and retained no transferable job skills; and (9) considering Coats' age, education, work experience, and RFC within the framework of Rule 204.00, there were jobs that exist in significant numbers in the national economy that he could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Coats had not been under a "disability" as defined in the Act from March 1, 2002, through the date of the ALJ's decision.

## II.  Discussion

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ determined that Coats had severe impairments consisting of a seizure disorder, optic neuritis, headaches and a substance abuse disorder, but that Coats could perform a significant number of sedentary and light, simple and repetitive jobs in the national economy. Coats argues that the ALJ's decision is not supported by substantial evidence.

Coats first argues that the ALJ erred in finding that Coats' impairments did not meet or equal Listing 11.02 (epilepsy)[1] or Listing 11.09 (multiple sclerosis).[2] Coats, as the claimant, "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

---

[1] Listing 11.02 Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment. With:
A. Daytime episodes (loss of consciousness and convulsive seizures) or
B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

[2] Listing 11.09 Multiple sclerosis. With:
A. Disorganization of motor function as described in 11.04B; or
B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or
C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

The ALJ discussed Listing 11.02 (epilepsy - convulsive epilepsy) and Listing 11.03 (epilepsy - nonconvulsive epilepsy). (R. at 19). The ALJ concluded that "[t]he evidence does not document the frequency or intensity of seizure activity required under these listings." *Id.* The ALJ discussed the evidence as it related to the frequency of the seizures and the fact that they could be managed with medication, and that discussion was thorough. (R. at 22-25). The ALJ determined that Coats' seizure disorder was also exacerbated by noncompliance with medications and by substance abuse. (R. at 24). No medical source, including the State agency physicians, concluded that Coats' impairments satisfied a listing. (R. at 38, 40). The ALJ's conclusions as to Coats' seizure disorder are supported by substantial evidence.

The ALJ did not mention Listing 11.09, but contrary to Coats' contention, in this case it was not legal error. The ALJ did not ignore Coats' "probable multiple sclerosis." He noted that although there was some question as to whether Coats' seizures and optic neuritis were associated with multiple sclerosis, there was no definite diagnosis of multiple sclerosis. (R. at 18, citing 239, 282). He acknowledged that an MRI showed findings consistent with multiple sclerosis, but that Coats had experienced only one episode of neurological symptoms, and that two episodes are required for a diagnosis of multiple sclerosis. (R. at 18, 239). Based on this evidence, the ALJ concluded that Coats' "probable multiple sclerosis" was not a severe impairment. (R. at 18). Coats failed to cite any evidence in his initial brief showing that his multiple sclerosis satisfied each of the criteria of Listing 11.09.

Coats also contends that the ALJ erred in determining, based on his lay opinion, that Coats' impairments were not medically equivalent to a listed impairment. Coats argues that the ALJ was required to summon a medical advisor to testify as to this issue. In support of this argument, Coats cites *Boiles v. Barnhart*, 395 F.3d 421, 424 (7th Cir. 2005). *Boiles* does not hold that a medical expert must testify in every case. In *Boiles*, the court of appeals found error because the ALJ's finding at step three was not supported by the record, and in fact was contradicted by the opinions of several physicians. *Id.* at 424-26. Here, Coats does not point to any medical source who opined that his impairments were medically equivalent to a listing. Moreover, the State Agency physicians did not find equivalence in this case. (R. at 38, 40).

The ALJ's analysis of Coat's impairments in the context of the listings was reasonable and supported by substantial evidence. For all of these reasons, the ALJ did not err in finding that Coats' impairments did not satisfy a listing.

Next, Coats argues that the ALJ's credibility determination was erroneous. He argues that the ALJ erred in discounting his credibility based on findings that Coats was noncompliant with his medications and because alcohol consumption was associated with his seizures. In determining Coats' credibility, the ALJ recited the appropriate regulations. (R. at 21-22, citing SSR 96-7p, SSR96-4p, and 20 C.F.R. §§ 404.1529, 416.929). The ALJ discussed each of the statutory criteria in the context of Coats' testimony and other evidence. (R. at 21-26). Coats testified that he had seizures two or three times per month despite medications. (R. at 22). The ALJ noted that at times when Coats denied alcohol

use, other records from the same time period indicated use of alcohol. (R. at 22). The ALJ reasoned that because Coats was not a credible reporter regarding his alcohol consumption, his credibility as a reporter of symptoms, including the frequency of seizures, was diminished. (R. at 24). He noted that Coats' claim of two seizures per month was not supported in 2006 and 2007, as only one documented seizure occurred in 2006. (R. at 24). The ALJ did not, however, contrary to Coats' suggestion, limit his reasoning to the fact that Coats' seizures were not all documented by objective evidence. He discussed the fact that the record indicated that Depakote, when taken at therapeutic levels, controlled Coats' seizures. (R. at 23-26). The ALJ discussed Coats' daily activities and determined that there was not a curtailment of activities such that he was not able to sustain an adequate level of function. (R. at 26). The ALJ concluded that Coats' statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. *Id.*

A reviewing court affords a credibility finding "'considerable deference,' and [will] overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). "[A]n ALJ's credibility assessment will stand as long as [there is] some support in the record." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (internal quotation omitted). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) (citations omitted). The ALJ provided specific reasons for his finding that Coats was not totally credible and those reasons are supported by the record. In this case, the ALJ discussed in detail the appropriate factors in weighing Coats' credibility. The ALJ credited Coats' reports of seizures and other limitations to some extent in assessing his RFC. The ALJ's discussion relating to Coats' credibility is adequate to allow the court to trace his reasoning. The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination.

Finally, Coats argues that the ALJ's RFC assessment omitted all of the severe limitations that were caused by his impairments. Specifically, he contends that because the vocational expert testified that if all of Coats' testimony was credited, he could not work, the ALJ erred in not finding Coats disabled. (R. at 318, 321) (R. at 319 is missing from the transcript). The ALJ's RFC assessment limited Coats to simple and repetitive work, avoiding work around unprotected heights and dangerous moving machinery, not operating a motor vehicle or performing jobs requiring wide visual fields or color perception. (R. at 21). When given this hypothetical, the vocational expert testified that there were 4,800 light inspector/tester jobs, 500 sedentary inspector/tester jobs, 14,000 light assembler jobs and 2,200 sedentary assembler jobs in the national economy that Coats could perform. (R. at 27). In his decision, the ALJ explained the extent to which he accommodated Coats' symptoms of his visual impairment, headaches, and his seizure disorder. (R. at 25). As discussed above, the ALJ's credibility determination was not patently wrong, and therefore, the court cannot reverse the action based on Coats' argument that the ALJ should have fully credited each of Coats' allegations as to the frequency and severity of his seizures and other symptoms.

As noted above, the court's role in this case is not to attempt a *de novo* determination of Coats' entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence. If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation omitted). The court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

"An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, the ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Coats' impairments, the ALJ's decision must be affirmed.

### III. Conclusion

There was no reversible error in the assessment of Coat's applications for SSI and DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Coats is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 08/25/2009

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana